UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON LEE JOHNSON,

    Plaintiff,

        v.                          CAUSE NO. 3:21-CV-517-DRL-MGG

RON NEAL *et al.*,

    Defendants.

## OPINION AND ORDER

Brandon Lee Johnson, a prisoner without a lawyer, filed an amended complaint against thirteen defendants seeking monetary damages for a variety of alleged wrongs. ECF 1. He is suing Warden Ron Neal, Commissioner Robert Carter, Board of Health, Supervisor Tibbiles, Captain Dustain, Captain Itodo, Lieutenant Gordon, Lieutenant Winn, Counselor Todd Marsh, Caseworker Siuda, Sergeant Allman, Sergeant Brandon Stovall, and Sergeant Larry Haskell. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In his amended complaint, Mr. Johnson alleges he was subjected to numerous unpleasant prison conditions while housed at Indiana State Prison (ISP). The Eighth

Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (citations and quotations omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (when inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Mr. Johnson initially alleges that, on January 15, 2020, when he was moved to cell 105 D-West, he was given the range tender job and asked to keep the fires down. ECF 24

at 3. He states he asked Lieutenant Gordon for a mop and broom but was told those items should be used before 2:00 p.m. *Id*. Mr. Johnson told Lieutenant Gordon it was only 12:30 p.m., but Lieutenant Gordon refused to give him a mop and broom and told him to return to his cell. *Id*. Here, it cannot plausibly be inferred that denying Mr. Johnson's request for a mop and broom on one occasion amounts to deliberate indifference. Moreover, being denied a mop and broom necessary to complete his assigned duties for the range tender job isn't an objectively serious enough matter to implicate constitutional concerns. Therefore, he may not proceed against Lieutenant Gordon.

Mr. Johnson next asserts that, on January 20, 2020, at about 7:00 a.m., a pipe burst in D-Cellhouse causing toilets on ten ranges to overflow, with water from the top floor flooding onto lower floors. ECF 24 at 4. From about 8:40 a.m. to 9:00 a.m., Lieutenant Winn pushed a cart around Mr. Johnson's range containing holiday food trays while toilet water dripped onto the meals. *Id*. Mr. Johnson told Lieutenant Winn that the food trays were wet and contaminated, but Lieutenant Winn instructed him to pass out the trays. *Id*. Lieutenant Winn later gave him a squeegee and ordered him to push the toilet water off the range. *Id*. At dinner time, sack meals were placed on a cart and pushed through the toilet water. *Id*. Mr. Johnson states that Lieutenant Winn ordered him to pass out the sack meals even though he hadn't showered and only wore plastic gloves. *Id*. After passing out the sack meals, he was ordered to continue pushing toilet water down the range, but Lieutenant Winn wouldn't permit him to take a shower. *Id*. Mr. Johnson returned to his cell soaked in toilet water. *Id*. The following day, on January 21, 2020, the breakfast food trays were placed on the same dirty cart that had been covered in toilet

3

water. *Id*. Mr. Johnson hasn't stated a claim against Lieutenant Winn because he hasn't alleged that he ate the food from a tray that was on the dirty cart, and he cannot bring a claim on behalf of other inmates. Therefore, he hasn't stated a claim against Lieutenant Winn.

Mr. Johnson also asserts that Captain Dustain and Sergeant Stovall were responsible for the deplorable conditions on January 20 and 21. *Id*. "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Supervisory staff can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). Here, Mr. Johnson hasn't alleged facts from which it can be plausibly inferred that either Captain Dustain or Sergeant Stovall facilitated, approved, condoned, or turned a blind eye toward the alleged unconstitutional conditions. Thus, he hasn't stated a claim against these two defendants.

Mr. Johnson next alleges that, on February 7, 2021, following a snowstorm, the heat at ISP didn't work. ECF 24 at 5. Mr. Johnson states that it was so cold that the left window in the front of his cell had ice on the inside of it. *Id*. Mr. Johnson was housed in an area where the doors were frequently opened and closed, causing his cell to be extremely cold, such that, it felt like he was "jumping in a pool of ice water" each time a door was opened. *Id*. Mr. Johnson asked Lieutenant Winn for extra blankets for the inmates on the range, but she told him there were no available blankets. *Id*. It cannot be

4

plausibly inferred that denying Mr. Johnson's request for a blanket on one occasion amounts to deliberate indifference. Mr. Johnson next speculates that Lieutenant Winn, Sergeant Stovall, and other officers on the night shift often used the cold temperature as a tactic to keep from running showers and having recreation, or to retaliate against inmates for throwing feces and urine on officers. *Id*. But he doesn't allege any facts suggesting these improper motives had anything to do with the events on February 7, 2021. He may not proceed against these defendants.

On February 15, 2021, Mr. Johnson asserts that he heard a neighboring inmate tell Sergeant Stovall he was going to hang himself if he didn't get him out of his cell. ECF 24 at 5. He asked Sergeant Stovall to take the inmate out for recreation, but Sergeant Stovall told him the inmate had refused recreation time. *Id*. Mr. Johnson claims that Sergeant Stovall then told the inmate "Do what you got to do." *Id*. at 6. Shortly thereafter, another officer walked past the inmate's cell and yelled "he [is] trying to hang himself." *Id*. At this point, Sergeant Stovall waved his hand motioning to the officer to leave the range and said to Mr. Johnson "Your neighbor is acting like he [is] go[ing to] hang hi[m]self if I don't take him to rec, but he [is] faking tell him to be cool." *Id*. When Mr. Johnson came out of his cell, the inmate appeared to be unconscious. *Id*. Mr. Johnson threw cold water on the inmate, but he didn't move. *Id*. He told Sergeant Stovall that the inmate wasn't faking, and Sergeant Stovall needed to open the cell door. *Id*. However, the inmate had wrapped his cell door with string making it very difficult to open the door. *Id*. The inmate ultimately hanged himself from the shelf in his cell. *Id*. at 6-7.

5

Mr. Johnson cannot proceed on this claim because "[a]n Eighth Amendment claim based on the infliction of psychological pain on an inmate requires (1) objectively, sufficiently serious misconduct, and, (2) subjectively, an intent to wantonly inflict psychological pain for no legitimate purpose." *Snow v. List*, No. 11-cv-3411, 2014 WL 1515613, 1 (C.D. Ill. April 17, 2014) (*citing Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003)). Here, Mr. Johnson hasn't pleaded facts that suggest Sergeant Stovall intended to inflict psychological pain on him. Additionally, to the extent he asserts Warden Neal, Captain Dustain, Lieutenant Winn, Commissioner Carter, Caseworker Siuda, and Counselor Marsh subjected him to cruel and unusual punishment and should be held responsible for the inmate's death, he cannot sue on behalf of the deceased inmate. Furthermore, Mr. Johnson hasn't shown that these defendants were personally involved in the incident or even aware of the inmate's situation. *Horshaw*, 910 F.3d at 1029 ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."). He has also not alleged facts from which it can be plausibly inferred that these defendants facilitated, approved, condoned, or turned a blind eye toward the inmate's situation. *See Purdue Univ.*, 928 F.3d at 664. Thus, he has not stated a claim against these defendants.

Mr. Johnson next asserts that, on February 22, 2021, while he was sleeping, he felt something pinch his right eyelid twice. ECF 24 at 7. He woke up to find a rat or mouse on his shoulder. *Id*. He yelled for medical help and was taken to the medical unit where his eye was treated with antibiotics. *Id*. Mr. Johnson contends that when he wakes up at

6

night he chases mice to stop them from climbing in his bed. *Id*. He asserts that Supervisor Tibbiles was made aware of the situation, but did nothing about it. *Id*. at 8. Mr. Johnson further contends that Warden Neal, Commissioner Carter, the Board of Health, Captain Dustain, Captain Itodo, Lieutenant Winn, and Lieutenant Gordon should be held accountable for the prison's mice problem. *Id*.

Prolonged exposure to infestations of mice can amount to an Eighth Amendment violation. *See Davis v. Williams*, 216 F.Supp.3d 900, 907-08 (N.D. Ill. 2016). Though Mr. Johnson asserts Supervisor Tibbiles knew about the February 22, 2021 incident, it cannot plausibly be inferred that his alleged failure to act on one occasion amounts to deliberate indifference. Furthermore, Mr. Johnson hasn't alleged facts that the other defendants he has named were aware of the problem, much less deliberately indifferent to it. Knowing that there is a problem generally doesn't constitute deliberate indifference. As stated, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and the defendants cannot be held liable simply because they employ or supervise correctional staff. *See Burks v. Raemisch*, 555 F.3d 592, 594-596 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Therefore, it cannot be plausibly inferred from the facts alleged by Mr. Johnson that the defendants were deliberately indifferent to the mice issue.[1]

---

[1] The Board of Health cannot be charged with unconstitutional policies or practices. Assuming that the Board of Health was empowered to inspect the prison for health violations, *see* Ind. Code § 16-20-1-21, any failure to do so does not provide a basis for § 1983 liability because Mr. Johnson has no constitutional right to an inspection. "[The constitution] limits the powers of government but doesn't give people legally enforceable rights to demand public services and to obtain damages or other legal relief if the government fails to provide them." *Tuffendsam v. Dearborn Cnty. Bd. of Health*, 385 F.3d 1124, 1126 (7th Cir. 2004) (citing *DeShaney v. Winnebago Cnty. Dep't of*

On February 25, 2021, Mr. Johnson alleges that he was told to pack up his property because he was moving to cell 516 D-West in the disciplinary segregation unit. ECF 24 at 8. When he arrived at his new cell, he didn't have his toilet brush, and the toilet was broken and filthy. *Id*. Mr. Johnson brought the toilet situation to the attention of Sergeants Stovall and Haskell, but they did nothing to rectify the problem. *Id*. He asked a plumbing staff employee to fix his toilet, but the employee didn't have the parts to fix it. *Id*. Mr. Johnson next took a shower, but refused to go back to his cell. *Id*. Lieutenant Lott then gave him some cleaning supplies, but since he didn't have any gloves he wrapped his hands in plastic wrap and cleaned feces out of the toilet with his hands. *Id*. Here, Mr. Johnson has not alleged facts that show he was denied adequate cleaning supplies or that the defendants were deliberately indifferent to his need for cleaning supplies. He further alleges that the toilet could only be flushed two times each hour, and it took four flushes to completely eliminate the feces. *Id*. at 8-9. It is unclear how long the situation with the toilet lasted, but even so, what Mr. Johnson has described doesn't rise to the level of an unconstitutional condition.

On March 18, 2021, Mr. Johnson asserts that he woke up in extreme pain and struggling to breathe because there were a number of fires burning on his range. ECF 24 at 9. Given Mr. Johnson's difficulty breathing, a neighboring inmate called a medical emergency, but Sergeant Stovall didn't arrive until many hours later. *Id*. When Sergeant Stovall saw Mr. Johnson, he told him he looked fine and would not call a signal. *Id*. Mr.

---

*Social Services*, 489 U.S. 189 (1989)). Accordingly, Mr. Johnson has not stated a claim against the Board of Health.

Johnson asserts Sergeant Stovall advised him to lie on the floor and pretend he was unconscious and the next officer who walked by would call a signal. *Id*. He states another officer saw him struggling to breathe, and decided to cuff him up and take him to a holding cell on another floor. *Id*. Mr. Johnson states his breathing improved in the holding cell where it was cooler and away from smoke from the fires. *Id*. Mr. Johnson asserts Sergeant Stovall denied him medical care when he refused to call a signal. *Id*.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Because Mr. Johnson hasn't alleged that Sergeant Stovall knew he needed medical care, his allegations don't amount to deliberate indifference.

Furthermore, Mr. Johnson alleges that, on March 18, 2021, inmates splashed officers with urine, feces, blood, and spit while they were passing out meals trays. ECF

9

24 at 9. Sergeant Stovall ordered two officers to wipe off the trays and pass them out. *Id*. Mr. Johnson asserts he hasn't eaten a hot meal in his housing unit since March 18, 2021, because he fears the food is contaminated or intentionally poisoned. *Id*. at 10. Mr. Johnson says that he made Warden Neal, Commissioner Carter, the Board of Health[2], Lieutenant Winn, and Supervisor Tibbiles aware of this issue. *Id*. Here, Mr. Johnson has not plausibly stated a claim against Sergeant Stovall because he has not alleged he ate any of the food from the meal trays. Furthermore, he has not alleged that the other defendants he has named were aware of the incident or facilitated, approved, condoned, or turned a blind eye toward the incident. *See Purdue Univ.*, 928 F.3d at 664. He hasn't stated a claim against these defendants.

On April 20, 2021, Mr. Johnson was transferred to general population and housed in cell 311 D-West. ECF 24 at 11. When he arrived at the cell, the cell was filthy and contaminated with feces on the bars, door, food slot, ceiling, and under the bed. *Id*. He told Sergeant Stovall he needed cleaning supplies for his cell, but Sergeant Stovall told him there were no available supplies. *Id*. He later received enough bleach from another inmate to clean the sink and toilet, but he had to clean the remainder of his cell using a pair of socks and shampoo. *Id*. The next day, on April 21, 2021, Sergeant Haskell didn't provide Mr. Johnson with any cleaning supplies. *Id*. at 11-12. He continued to be housed in the contaminated cell until May 3, 2021. *Id*. at 12. Giving Mr. Johnson the benefit of the

---

[2] Once more, the Board of Health cannot be charged with unconstitutional policies or practices. *Tuffendsam v. Dearborn Cnty. Bd. of Health*, 385 F.3d 1124, 1126 (7th Cir. 2004) (citing *DeShaney v. Winnebago Cnty. Dep't of Social Services*, 489 U.S. 189 (1989)). Therefore, Mr. Johnson has not stated a claim against the Board of Health.

inferences to which he is entitled at this stage of the proceeding, he has stated a claim against Sergeants Stovall and Haskell for knowingly leaving him in a cell contaminated with feces from April 20, 2021, to May 3, 2021, in violation of the Eighth Amendment.

Mr. Johnson next alleges that, at some point in April 2021, there was at least one fire burning on each range and his entire cell smelled like smoke. ECF 24 at 10. After becoming short of breathe from the smoke, he asked Sergeant Stovall to take him off the range to a holding cell away from the smoke, but Sergeant Stovall wouldn't do so. *Id*. At a later point, another officer who was working on the range, cuffed Mr. Johnson, and took him outside for about five minutes. *Id*. Because Mr. Johnson hasn't plausibly alleged that Sergeant Stovall knew he needed medical assistance, his allegations don't amount to deliberate indifference.

On May 3, 2021, Mr. Johnson was moved to cell 411 D-West, which had excessive amounts of dust and particles. ECF 24 at 13. He states pepper spray or mace had been sprayed everywhere in the cell. *Id*. He wasn't given any cleaning supplies. *Id*. His eyes would burn when he drank water and his private parts would burn after he touched the sink or used the toilet. *Id*. Mr. Johnson asserts he was moved to cell 411 D-West shortly after the prior inmate had a taser and mace used on him and before the cell was cleaned. He says when he was moved into this cell, the construction workers were drilling and creating a cloud of smoke and dust, which caused him to have difficulty breathing. *Id*. Mr. Johnson hasn't stated a claim because he hasn't identified the individual who was responsible for moving him to cell 411 D-West.

11

Furthermore, Mr. Johnson alleges that, on May 3, 2021, Sergeant Allman subjected him to excessive force when he pointed a gas gun in his face, snatched him up off his feet when he was handcuffed in extremely tight cuffs, and pulled his shoulder in and out of place. ECF 24 at 12. He asserts Sergeant Allman also grabbed him almost breaking his arm while he dragged him up the stairs. *Id*. at 13. However, Mr. Johnson has already been granted leave to proceed on this claim in *Johnson v. Neal*, 3:22-CV-1046-DRL-MGG (N.D. Ind. filed Dec. 20, 2022). It is malicious to sue the same defendants for the same events in two cases. *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (suit is "malicious" for purposes of Section 1915A if it is intended to harass the defendant or is otherwise abusive of the judicial process).

Finally, Mr. Johnson alleges that on June 8, 2021, when there was a fire burning on the range and he was having trouble breathing from the smoke, he was denied medical care. ECF 24 at 10. He waived a white t-shirt outside of his cell to get medical help and a neighboring inmate yelled for help for more than fifteen minutes, but Sergeant Haskell refused to respond or provide him with help. *Id*. at 10-11. Mr. Johnson states he was later given a medical request slip and told that the medical staff was aware of his situation, but he never received treatment. *Id*. at 11. He asserts that all thirteen defendants he has sued in this case are responsible because there is at least one fire every day in D-Cellhouse. *Id*. Mr. Johnson states there have been fires burning while Commissioner Carter and Warden Neal have been in D-Cellhouse. *Id*. He says the fires have never been cleaned up properly, which has caused there to be hazardous living conditions. *Id*. Here, Mr. Johnson hasn't alleged facts that show Sergeant Haskell knew he required medical

care on June 8, 2021. Furthermore, his allegations that all thirteen defendants are responsible for denying him medical care do not state a claim because he has not shown that any of the defendants were personally involved in the incident.

For these reasons, the court:

(1) GRANTS Brandon Lee Johnson leave to proceed against Sergeant Brandon Stovall and Sergeant Larry Haskell in their individual capacities for compensatory and punitive damages for knowingly leaving him in a cell contaminated with feces from April 20, 2021, to May 3, 2021, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Warden Ron Neal, Commissioner Carter, Board of Health, Supervisor Tibbiles, Captain Dustain, Captain Itodo, Lieutenant Gordon, Lieutenant Winn, Counselor Todd Marsh, Caseworker Siuda, and Sergeant Allman;

(4) GRANTS the defendants until **August 11, 2023**, to amend their answer, if they deem it necessary in light of the amendment.

SO ORDERED.

July 31, 2023                                              *s/ Damon R. Leichty*
                                                          Judge, United States District Court